# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-1139** (Ohio County 99-F-72)

**Shawn Pethel,**
**Defendant Below, Petitioner**

**FILED**

October 17, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner and defendant below Shawn Pethel, appearing pro se, appeals the order of the Circuit Court of Ohio County entered June 19, 2013, that denied his Motion for Hearing on Motion to Dismiss. The State of West Virginia, by counsel Derek A. Knopp, filed a response, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 13, 1999, while serving a one year sentence in the State of Ohio for violating the conditions of his parole in that state, petitioner was indicted by a grand jury in the Circuit Court of Ohio County, West Virginia, on twenty counts of sexual assault in the third degree, three counts of filming a minor engaged in sexually explicit conduct, two counts of possession with intent to deliver a controlled substance, five counts of conspiracy, one count of nighttime burglary, one count of conspiracy to commit nighttime burglary, and one count of grand larceny.[1]

On September 18, 1999, the State of West Virginia ("State") placed a detainer on petitioner in the State of Ohio and, on that same date, petitioner executed a series of forms initiating a voluntary return and request for final disposition pursuant to the Interstate Agreement on Detainers Act ("IAD"), West Virginia Code § 62-14-1 through § 62-14-7. Petitioner was

---

[1] The facts giving rise to petitioner's indictment are set forth in detail in *Pethel v. McBride*, 219 W.Va. 578, 638 S.E.2d 727 (2006), wherein this Court reversed a lower court's order that, following a hearing on petitioner's petition for writ of habeas corpus, dismissed the charges against petitioner. Although the facts underlying petitioner's indictment are not germane to the present appeal, it is noted that, given that petitioner appears before this Court pro se, much of the procedural history set forth herein has been derived from our opinion in *Pethel*.

1

returned to West Virginia for arraignment on October 12, 1999, at which time he pled not guilty to all charges of the indictment. The State informed the circuit court that petitioner was currently serving a prison sentence in Ohio; that he was transported to West Virginia for arraignment; and that the State would make efforts to have petitioner to stay in West Virginia.[2]

At a hearing held on October 18, 1999, the circuit court was advised that Ohio had placed a hold on petitioner, but that the State of West Virginia had arranged for petitioner to remain in West Virginia indefinitely. However, the circuit court responded that it did not want Ohio County paying the costs of keeping petitioner in West Virginia. Petitioner was permitted to confer with newly-appointed counsel[3] and was returned to Ohio on October 27, 1999.

On November 18, 1999, petitioner filed a motion to dismiss, with prejudice, the charges alleging that the IAD's "anti-shuttling provisions"[4] were violated when he was returned to Ohio before a trial on the merits was conducted in West Virginia. On November 30, 1999, a suppression hearing was conducted at which petitioner's counsel and co-defendants appeared. However, petitioner was not present because he refused to be returned to West Virginia. The

---

[2] In his brief to this Court, petitioner contends that he advised the circuit court that he wished to remain in West Virginia. However, as noted by this Court in *Pethel,* petitioner's counsel specifically stated, "'We would not oppose [the State's] objection to him remaining in the State.'. . . This statement by counsel is the only statement disclosed in the transcript of the October 12, 1999[,] arraignment to support [petitioner's] representation" that, at his arraignment, he expressed a desire to remain in West Virginia pending trial. 219 W.Va. at 584 n.21, 638 S.E.2d at 733 n.21.

[3] Petitioner was appointed at least seven different counsel prior to the appointment of counsel who ultimately represented him at trial.

[4] West Virginia Code § 62-14-1, Article III(d) provides as follows:

Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, superintendent or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

circuit court did not proceed with the suppression hearing given petitioner's absence.[5]

Thereafter, a status hearing was held on December 7, 1999, in anticipation of petitioner's December 27, 1999, trial date. However, petitioner again did not appear because he refused to return to West Virginia and, further, the State of Ohio refused West Virginia's request for his return. The trial date was continued for just cause. Upon completion of his sentence in Ohio, petitioner was extradited to West Virginia pursuant to a May 1, 2000, order of the Court of Common Pleas of Noble County, Ohio.

Following a jury trial on November 16 and 17, 2000, petitioner was convicted of twenty counts of sexual assault in the third degree, three counts of filming a minor in sexually explicit conduct, and one count of conspiracy. He subsequently entered a plea agreement pursuant to which he pled guilty to one count of possession with intent to deliver a controlled substance and nighttime burglary and the remaining counts of the indictment were dismissed, with prejudice. He was sentenced to not less than 53 nor more than 155 years of incarceration.

Petitioner filed a post-trial motion to dismiss the charges on August 18, 2003.[6] He subsequently filed a direct appeal of his convictions with this Court on December 18, 2003, in which he argued, inter alia, that "his rights under the IAD had been violated, and that this violation mandated dismissal of the charges against him . . . ." *Pethel*, 219 W.Va. at 586, 638 S.E.2d at 735. "With respect to the IAD, [petitioner] argued that his return to the State of Ohio prior to being tried on the charges in West Virginia violated the anti-shuttling provisions of the IAD." 219 W.Va. at 587, 638 S.E.2d at 736 (footnote omitted). Petitioner relied on the United States Supreme Court's decision in *Alabama v. Bozeman*, 533 U.S. 146 (2001), in asserting that "the IAD violation mandated dismissal of the charges against him." *Id.* This Court unanimously refused the petition for appeal on April 1, 2004. Petitioner did not seek any further appeal of his conviction. While his petition for appeal was pending, petitioner filed a petition for writ of prohibition.[7] The writ was unanimously refused by this Court on May 6, 2004.

_____

[5] Likewise, although petitioner's motion to dismiss was briefly addressed by the circuit court at the November 30, 1999, hearing, the circuit court indicated that it would not rule on the motion in petitioner's absence. Hearings on petitioner's November 18, 1999, motion to dismiss were held on July 13 and 26, 2000. *Pethel*, 219 W.Va. at 586, 638 S.E.2d at 735. The circuit court denied the motion by order entered August 10, 2000, holding that "dismissal was not required as [petitioner's] return to the State of Ohio was in furtherance of efforts to rehabilitate him, that he did not languish in the West Virginia court system, and that there was no objection to his return." *Id.*

[6] Petitioner's August 18, 2003, motion to dismiss was not ruled upon until the circuit court denied petitioner's subsequent motion for a hearing thereon by order entered June 19, 2013. It is the circuit court's denial of this motion that is the subject of the instant appeal. *See* discussion, *infra*.

[7] In his petition for writ of prohibition, petitioner argued that

Prior to the filing of his direct appeal and petition for writ of prohibition, petitioner filed a petition for writ of habeas corpus.[8] By order entered November 16, 2004, the circuit court granted habeas relief, concluding that *Bozeman* was controlling and required dismissal of the charges. The circuit court determined that "the violation of the IAD removed jurisdiction from the State of West Virginia to try [petitioner] on the charges contained in the indictment." *Pethel*, 219 W.Va. at 587, 638 S.E.2d at 736. The State appealed the circuit court's order and this Court reversed. In *Pethel*, this Court held, inter alia, that the rights created under the IAD are statutory in nature and do not give rise to the level of rights guaranteed under either the federal or our state constitutions; that the IAD is not a jurisdictional statute and, thus, a violation of the IAD does not deny a trial court jurisdiction over criminal charges; and that a violation of the IAD is not cognizable in a post-conviction habeas proceeding in state court. 219 W.Va. at 589-94, 638 S.E.2d at 737-43.[9]

Petitioner subsequently filed a federal habeas petition in which he raised the same IAD issues addressed by this Court in the state habeas matter. The federal habeas petition was dismissed, with prejudice, and, on appeal to the United States Court of Appeals for the Fourth Circuit, the dismissal was affirmed by order entered August 18, 2010. *See Pethtel v. Ballard*,[10] 617 F.3d 299 (4th Cir. 2010). Petitioner's petition for writ of certiorari was denied by the United

---

he was being wrongfully imprisoned based upon a clearly erroneous conviction and that his sentences were of no legal effect. He based the Petition on the alleged violation of the IAD, arguing that the IAD stripped the trial court of jurisdiction to proceed on the charges asserted against him. He again raised *Bozeman* in support of his writ petition.

*Pethel*, 219 W.Va. at 587, 638 S.E.2d at 736.

[8] Petitioner did not proceed with the habeas petition until after the aforementioned direct appeal and writ of prohibition were both denied.

[9] The Court also held in *Pethel* that voluntary entry of a guilty plea waives all rights conferred under the IAD including the right to the dismissal of charges upon a violation thereof; that where West Virginia is a receiving state pursuant to the IAD, dismissal of a case may be with or without prejudice, which shall be determined by considering, inter alia, the seriousness of the offense, the facts and circumstances leading to the dismissal, and the impact of a reprosecution on the administration of the agreement on detainers and the administration of justice; and that the IAD is not violated if, prior to trial, a defendant is returned to the custody of the sending State by appropriate court order issued after reasonable notice to the prisoner and the State of West Virginia and an opportunity for hearing. 219 W.Va. at 595-98, 638 S.E.2d at 745-47.

[10] The Court acknowledges the slight (though unexplained) variation in the spelling of petitioner's name in the federal habeas matter.

4

States Supreme Court on May 2, 2011.[11] *See Pethtel v. Ballard*, 131 S.Ct. 2873 (2011).

On May 20, 2013, petitioner moved the circuit court for a hearing on his previously-filed August 18, 2003, post-trial motion to dismiss, which, as indicated above, had not heretofore been decided. By order entered June 19, 2013, the circuit court concluded that petitioner's motion was without merit, denied the motion, and dismissed the matter from the active docket of the court. This appeal followed.

"Our standard of review of a motion to dismiss an indictment is generally *de novo.*" *State v. Davis,* 205 W.Va. 569, 578, 519 S.E.2d 852, 861 (1999). As recounted above, throughout this case, petitioner has argued on innumerable occasions and in various pleadings in both state and federal courts that the circuit court violated the IAD by returning him to the State of Ohio following his arraignment and before final disposition of the West Virginia charges. Petitioner argues that, under *Bozeman*, such a violation of the IAD requires that the charges against him be dismissed, with prejudice.

In *Pethel*, in which this Court reversed the circuit court's order that granted petitioner habeas relief, we held, inter alia, that a violation of the IAD "is not cognizable in a post-conviction habeas corpus action brought pursuant to West Virginia Code § 53-4A-1 (1967)." 219 W.Va. at 581, 638 S.E.2d at 730, syl. pt. 3, in part. We explained that, rather, "any challenge to the State's power to proceed on charges [is] properly brought either in a pre-trial petition for writ of prohibition or on direct appeal." 219 W.Va. at 591 n.33, 638 S.E.2d at 740 n.33. We also observed that at least one federal court has suggested "that a defendant alleging a violation of the IAD may seek injunctive relief, pursuant to 28 U.S.C. § 1983, to compel a state to comply with the IAD." *Id.* (citing *Cross v. Cunningham*, 87 F.3d 586, 588 (1st Cir. 1996), *cert. denied*, 513 U.S. 1111 (1995).). Petitioner's direct appeal and post-trial petition for writ of prohibition—in which petitioner argued, as he does here, that the violation of the IAD required dismissal of the charges against him under *Bozeman*—were both rejected by this Court in 2004. Petitioner again raised the IAD issue in his May 20, 2013, motion for hearing on his post-trial motion to dismiss, the denial of which he now seeks to appeal. The issue is clearly not cognizable in such a motion under *Pethel.* Furthermore, we note that a *post-trial* motion to dismiss—initially filed almost three years after the jury verdict and then not pursued for another ten years—is, likewise, not a cognizable motion under the West Virginia Rules of Criminal Procedure. *See* W.Va.R.Crim.P. 33 (providing that motion for new trial based on grounds other than newly discovered evidence "shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period"); W.Va.R.Crim.P. 34 (providing that motion for arrest of judgment "shall be made within ten days after verdict or finding of guilty, or after plea of guilty or nolo contendere, or within such further time as the court may fix during the ten-day

---

[11] Subsequently, on March 12, 2012, petitioner filed a motion to correct an illegal sentence in the circuit court pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure, arguing that his sentences for filming a minor engaged in sexually explicit conduct were illegal because the statute under which he was convicted prohibited only the filming of such material using *analog* technology, not the filming of such material using *digital* technology. The circuit court denied the motion and, in a memorandum decision, this Court affirmed. *State v. Pethel*, No. 12-0838 (W.Va. Supreme Court, June 28, 2013).

period"); and W.Va.R.Crim.P. 35(b) (providing that "motion to reduce a sentence may be made . . . within 120 days . . . ."). We, therefore, find that the circuit court did not err in denying petitioner's motion for hearing on his motion to dismiss, or in denying his motion to dismiss.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 17, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II